**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

HENRY LOSCH
a/k/a John Losch,

       Plaintiff,

vs.                                      Case No.: 2:18-cv-00809-FtM-99MRM

NATIONSTAR MORTGAGE LLC, et al.,

       Defendants.

_____

**PLAINTIFF'S FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

      **COMES NOW** the plaintiff, Henry Losch a/k/a John Losch ("Mr. Losch"), by and through the undersigned counsel, and hereby brings this Amended Complaint and Demand for Jury Trial ("Complaint") against Defendants Nationstar Mortgage LLC, d/b/a Mr. Cooper ("Nationstar"), and Experian Information Solutions, Inc ("Experian"), together as "Defendants," alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.* and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §559.55, *et seq.*

**JURISDICTION AND VENUE**

      1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1367 for pendant state law claims.

      2.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

      3.     Defendants transact business here; personal jurisdiction is established.

## PARTIES

4. Plaintiff, Henry Losch, is a natural person who resides in Lee County, Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

5. Defendant Nationstar, d/b/a Mr. Cooper, is a Texas financial institution with its principal place of business located at 8950 Cypress Waters Blvd., Coppell, TX 75019-4620, and is registered for conducting business in the state of Florida and has a registered agent in Florida, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525. Nationstar is engaged in the business of servicing and holding mortgage loans in the State of Florida and nationwide. Defendant is a "debt collector" as that terms is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(7). Defendant is "furnisher" of consumer credit information as that term is used in 15 U.S.C. § 1681s-2.

6. Defendant Experian is a consumer reporting agency with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626 and is registered for conducting business in the state of Florida and has a registered agent in Florida, CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324. Experian is one of the largest CRAs in the world. Experian is a "consumer reporting agency" as defined in Section 1681a(f) the FCRA.

7. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## GENERAL FACTS

8. Mr. Losch owned real property located at 1139 Cord Court, Apopka, Florida 32712 (the "Property").

9. The Property was purchased as the primary residence of Mr. Losch.

10. Mr. Losch lived in the home for at least a year before he was transferred for work and relocated to Fort Myers.

11. On March 24, 2017, Mr. Losch and his wife filed for bankruptcy under Chapter 7 of Title 11, the Bankruptcy Code. Mr. Losch filed his bankruptcy in the Middle District of Florida, Fort Myers Division, case number 9:17-bk-02438FMD.

12. Mr. Losch's bankruptcy schedules specifically listed the mortgage loan owed to CitiMortgage, Inc. ("CitiMortgage") in the amount of $143,000.00 for the Property.

13. At the time Mr. Losch's bankruptcy was filed, the Property was used as a rental and was tenant occupied. The rental income from the Property was disclosed on Schedule I of Mr. Losch's bankruptcy petition.

14. Mr. Losch's payments to CitiMortgage were current at the time of the bankruptcy filing.

15. Mr. Losch appeared at the First Meeting of Creditors on April 24, 2017.

16. On May 5, 2017–eleven days after the First Meeting of Creditors was held– Mr. Losch signed a reaffirmation agreement ("Reaffirmation") with CitiMortgage, Inc for the Property.

17. On May 18, 2017, the bankruptcy Trustee filed a Motion to Sell Property of the Estate.

18. On May 19, 2017, the Court sent a Notice of Deadline to File a Proof of Claim. The notice stated that there were possible assets in the case and the deadline to file a proof of claim was August 21, 2017.

19. On June 15, 2017, CitiMortgage filed a response to the Trustee's Motion to Sell Property of the Estate. The response stated that CitiMortgage may wish to negotiate and outbid the proposed sale price. It also stated that it was entitled to payment from the disposition of the property until its claim is paid in full.

20. On June 16, 2017, CitiMortgage filed a Notice of Withdrawal of Response to Motion to Sell Property of the Estate.

21. On June 20, 2017, the Bankruptcy Court issued an Order granting the Motion for Authority to Sell Property of the Estate.

22. On June 21, 2077, CitiMortgage filed a proof of claim for $140,441.86 in Mr. Losch's bankruptcy proceeding.

23. On June 26, 2017, Mr. Losch was granted a discharge in bankruptcy. The discharge order was sent by the Bankruptcy court to his creditors, including CitiMortgage.

24. On June 29, 2017, the Trustee's Quit Claim Deed transferring the Property from trustee for the Bankruptcy Estate of Henry John Losch, III and Jody Darlene Losch to the new owner was recorded with the Orange County, Florida Comptroller's Office; Document #20170363605.

25. On or about, July 14, 2017, Mr. Losch's bankruptcy counsel received a letter from CitiMortgage referencing Mr. Losch's bankruptcy filing and stating that effective August 1, 2017, the servicing of Mr. Losch's mortgage for the Property would be **transferred from CitiMortgage to Nationstar.**

26. Accordingly, Nationstar stood in the shoes of CitiMortgage with respect to matters related to collection of the subject debt from Mr. Losch.

27. On or about, August 9, 2017, Mr. Losch's bankruptcy counsel received a letter from Nationstar referencing Mr. Losch's bankruptcy filing and provided notice that Nationstar recently acquired the loan for the Property.

28. Mr. Losch began receiving invoices and statements from Nationstar monthly showing his new past due balances for the Property.

29. On or about November 20, 2017, Mr. Losch filed a Motion to Set Aside Order Granting Discharge Temporarily to Allow Debtor to Rescind Reaffirmation Agreement.

30. On or about February 7, 2018, Mr. Losch filed a Notice of Hearing and Amended Motion to Set Aside Order Granting Discharge Temporarily to Allow Debtor to Rescind Reaffirmation Agreement and properly served these documents to Nationstar.

31. On or about March 2, 2018, Mr. Losch received a letter from Nationstar stating that it was the mortgage loan servicer.

32. On or about April 5, 2018, a **Notice of Rescission** was filed with the court. The rescission states that the reaffirmation agreement previously signed by Mr. Losch for the Property on or about May 5, 2017 is **rescinded**.

## FACTS RELATIVE TO CREDIT REPORTING

33. On or about May 25th, 2018, Mr. Losch pulled his credit reports and found that Experian was still reporting a balance for Nationstar in the amount of $139,853.00, a past due balance of $10,006, and 180 days past due for February and March 2018. Experian was also not properly reporting the account as discharged in bankruptcy.

34. On or about June 15, 2018, Mr. Losch mailed Experian a dispute stating that the Nationstar account was discharged in his Chapter 7 bankruptcy case.

35. Upon information and belief, on or about June 18, 2018, Experian received the dispute letter from Mr. Losch and forwarded the dispute to Nationstar so that Nationstar could investigate the contents of the dispute.

36. On or about July 12, 2018, Mr. Losch received the dispute results from Experian.

37. The dispute results reflect that Experian and Nationstar did not correct the account. Instead, the past due balance increased and it was reporting an additional 180 days late for May 2018 and June 2018.

38. The inaccurate reporting on his credit has damaged his credit beyond what the bankruptcy had done and has made it increasingly difficult to be approved for any credit.

## FACTS RELEVANT TO DEBT COLLECTION

39. Between March 2018 and April 2018, Nationstar mailed Mr. Losch numerous letters stating that his loan was past due.

40. On or about March 2, 2018, Plaintiff received a letter from Nationstar stating that his loan was past due for the 8/1/2017 payment and due for all payments from and including that date in the amount of $10,163.11.

41. On or about, March 20, 2018, Plaintiff received a letter from Nationstar stating that Plaintiff was 232 days delinquent on his mortgage loan.

42. On or about, March 20, 2018, Plaintiff received a Mortgage Loan Statement from Nationstar reflecting a past due balance.

43. On or about, March 28, 2018, Plaintiff received an email from Nationstar indicating that he is behind on payments and states "Let's discuss your home loan options. We know keeping up with a mortgage can be challenging".

44. Despite the Order of Discharge and Notice of Rescission filed on April 5, 2018, Mr. Losch continued to receive correspondence and collection letters each month from the Nationstar.

45. Plaintiff received a letter dated April 10, 2018, from Albertelli Law stating that it represented Nationstar, the "creditor and servicer for the loan" related to the Property. The letter contains debt validation language and states the following: "if you are . . . a debtor in bankruptcy or have been discharged in bankruptcy, this letter is provided to you for information purposes to notify you of our Firm's legal retention. You should consult legal counsel regarding your obligations . . . if you previously received a discharge in a bankruptcy case involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally."

46. Plaintiff received a letter dated April 12, 2018, offering Mr. Losch a three (3)

month trial period plan for the Property.

47. Plaintiff received Mortgage Loan Statement dated April 18, 2018, which stated the amount due to Nationstar on the mortgage loan was $12,599.77. The Mortgage Loan Statement included a tear-off payment coupon which stated the total amount due on May 1, 2018, was $12,599.77, and further stated that the total due would be $12,599.77 if payment was received on or after May 17, 2018.

48. On or about May 9, 2018, Mr. Losch and his wife were served with a Summons & Complaint filed by Nationstar, case no. 2018-CA-4865 [WHAT COURT?]. Attached to the summons were Interrogatories, Request for Production of Documents, and Request for Admissions to Plaintiffs.

49. Plaintiff received a letter dated May 18, 2018, stating that Mr. Losch was 291 days delinquent on his mortgage loan.

50. Plaintiff received a "Mortgage Loan Statement" dated May 18, 2018, reflecting a reinstatement amount due $16,996.10. The Mortgage Loan Statement included a tear-off payment coupon which stated the reinstatement amount due on June 1, 2018, was $16,996.10, and further stated that the payment due would be $16,6996.10 if payment was received on or after June 17, 2018.

51. On or about April 20, 2018, Mr. Losch received a call from Nationstar about his mortgage account. Nationstar made this phone call directly to Mr. Losch when they knew he was represented by counsel.

52. On or about June 14, 2018, Mr. Losch filed a response to the Summons and Complaint stating the following:

"We deny the accuracy of this filing as we no longer own the property. It was sold to Tavira Properties in June 2017."

53. Even after Mr. Losch submitted a dispute to Experian and filed a response to

Nationstar's summons, he still continued to receive collection letters.

54.  Plaintiff received a letter dated June 15, 2018, offering Mr. Losch a three (3) month trial period plan.

55.  Plaintiff received a letter dated June 19, 2018, stating that Mr. Losch was now 323 days delinquent on his mortgage loan.

56.  Plaintiff received a Mortgage Loan Statement dated June 19, 2018, reflecting overdue payments in the amount of $13,904.73, lender paid expenses in the amount of $3,127.50, partial payment (unapplied) in the amount of $5.63; and a reinstatement amount due in the amount of $18,325.93.

57.  After Mr. Losch received the dispute results from Experian, he still continued to receive correspondences from Nationstar:

58.  Plaintiff received a letter dated July 15, 2018, offering Mr. Losch a three (3) month trial period plan for the Property.

59.  Plaintiff received a Mortgage Loan Statement dated July 18, 2018 reflecting overdue payments in the amount of $15,204.06, lender paid expenses in the amount of $4,372.50, partial payment (unapplied) in the amount of $5.63; and a reinstatement amount due in the amount of $20,870.26.

60.  Plaintiff received a letter dated July 18, 2018, stating that Mr. Losch was now 352 days delinquent on his mortgage loan.

61.  Plaintiff received a Mortgage Loan Statement dated August 20, 2018, reflecting overdue payments in the amount of $13,255.32, lender paid expenses in the amount of $4,687.50, partial payment (unapplied) in the amount of $5.63; and a reinstatement amount due in the amount of $18,956.83.

62.  Plaintiff received a letter dated August 14, 2018, offering Plaintiff a three (3) month trial period plan for the Property.

63. Plaintiff received Escrow Review Statement dated August 24, 2018, reflecting a shortage of $3,701.50.

64. Plaintiff received a letter dated September 2, 2018, offering "loss mitigation options."

65. Plaintiff received a Mortgage Loan Statement dated September 18, 2018, reflecting overdue payments in the amount of $14,274.96, lender paid expenses in the amount of $4,702.50, partial payment (unapplied) in the amount of $5.63; and a reinstatement amount due in the amount of $20,536.17.

66. Mr. Losch continues to receive letters from Nationstar claiming increasingly large amounts due.

67. Mr. Losch is shocked, confused and upset, because he thought his liability for the mortgage was extinguished when his bankruptcy trustee sold the property to a third party.

68. Moreover, Mr. Losch's correct understanding was that any personal liability he may have had for the debt owed to Nationstar would have been discharged in his bankruptcy and after his reaffirmation was rescinded.

69. At no time during Mr. Losch's bankruptcy case did CitiMortgage or Nationstar challenge the dischargeability of the debt in question.

70. Subsequent to entry of the order of Discharge and subsequent to the Notice of Rescission of Reaffirmation agreement in Mr. Losch's bankruptcy case, Nationstar continued to send Mr. Losch monthly Mortgage Loan Statements and other correspondence indicating the discharged debt remained owed to Nationstar.

71. The monthly statements each included an amount due, a payment due date, and most notably, a tear-off coupon which instructed Plaintiff to detach and include with his payment.

72. The Mortgage Loan Statements and other collection letters mailed to Mr.

Losch demanding payment were sent **after** discharge, **after** the notice of rescission of reaffirmation, and **after** Nationstar was aware that the Property no longer belonged to Mr. Losch.

73. There can be no reason for Nationstar to send such statements other than for the purpose of pressuring Plaintiff into paying a debt he does not owe.

74. Nationstar knew or should have known that Mr. Losch was granted a discharge by the Bankruptcy Court.

75. Nationstar knew or should have known that the bankruptcy Trustee sold the Property to a third party and that Mr. Losch no longer owned the Property.

76. Nationstar sent numerous letters and Mortgage Loan Statements to Mr. Losch regarding the outstanding loan. Nationstar communicated with Mr. Losch with such frequency, and in a manner that reasonably could be seen as abusive and harassing in nature.

77. Mr. Losch is 74 years old and no longer employed, his only income is social security.

78. Mr. Losch's wife has also had to pick up several part-time jobs to help afford the home they currently live in in Ft. Myers, Florida.

79. Mr. Losch and his wife have been struggling to recover from their bankruptcy and the constant contact from Nationstar has added to their stress and anxiety.

80. The actions of Nationstar as alleged herein constitute willful, intentional, gross and flagrant violations of the FDCPA and the FCCPA.

## COUNT I

### NATIONSTAR'S VIOLATIONS OF THE FAIR CREDIT REPORTING ACT ("FCRA")

81. Mr. Losch incorporates by reference paragraphs one through thirty-eight (1-38) of this Complaint as though fully stated herein.

82. At all times pertinent hereto, Defendant Nationstar was a "person" as that term

is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" to the credit reporting agencies.

83. Nationstar has a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer, see 15 U.S.C. § 1681s-2(a).

84. Nationstar also has an obligation under 5 U.S.C. § 1681s-2(b) to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency.

85. On at least one occasion within the past two years, by example only and without limitation, Defendant Nationstar violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

86. The FCRA requires a furnisher, such as Nationstar–after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher–to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

87. Experian notified Nationstar about Mr. Losch's dispute. The Experian Dispute Results specifically states the following:

"we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute and instructed them: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."

88. Nationstar failed to properly investigate Mr. Losch's dispute and failed to

correct the inaccurate information.

89. On information and belief, Nationstar's actions in the instant matter are representative of their normal policies and procedures - responding to disputes by providing only a cursory review of basic information and failing to investigate any further or failing to investigate and remediate any errors entirely.

90. Nationstar's conduct violated § 1681s-2(b) of the FCRA. Nationstar willfully and/or negligently violated these provisions of the FCRA in the following manner:

(a) By willfully and/or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

(b) By willfully and/or negligently failing to review all relevant information concerning the Plaintiffs account as provided;

(c) By willfully and/or negligently failing to report the results of their investigation of the inaccurate information to all credit reporting agencies;

(d) By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiffs file after conducting an investigation;

(e) By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

(f) By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by the Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiffs file to credit reporting agencies; and

(g) By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

91. As a result of this conduct, action and inaction of Nationstar, Plaintiff suffered damages, mental and emotional pain and anguish and the humiliation and embarrassment of the credit denials, reductions in lines of credit and reputation.

92. Further, Plaintiff suffered actual damages including the time and money spent to obtain credit reports, submit a dispute to Experian, and to speak with Nationstar frequently about his issue.

93. The conduct, action and inaction of Nationstar was both willful and reckless, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. In the alternative, the conduct, action and inaction was negligent, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681*o*.

95. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Nationstar in an amount to be determined by the Court pursuant to §§1681n and 1681*o*.

## COUNT II

### EXPERIAN'S VIOLATIONS OF THE FAIR CREDIT REPORTING ACT ("FCRA")

96. Mr. Losch incorporates by reference paragraphs one through thirty-eight (1-38) of this Complaint as though fully stated herein.

97. Experian violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

98. Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit report.

99. Experian violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Defendant Nationstar all of the relevant information regarding Plaintiff and his dispute.

100. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or correct the inaccurate

information upon reinvestigation.

101. As a result of Experian's violations of the FCRA, Plaintiff suffered actual damages which have been further described above.

102. The violations by Experian were willful, rendering Experian individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681*o*.

103. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681*o*.

## COUNT III

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

104. Mr. Losch incorporates by reference paragraphs one through thirty-two (1-32) and paragraphs thirty-nine through ninety (39-80) of this Complaint as though fully stated herein.

105. The foregoing acts and omissions of Nationstar constitute violations of the Fair Debt Collection Practices Act.

106. Nationstar authorized and generated Mortgage Loan Statements and other correspondence that were mailed to Mr. Losch to collect a debt it knew had been discharged in Mr. Losch's bankruptcy.

107. The debt was not only discharged in Mr. Losch's bankruptcy, but Nationstar knew Mr. Losch no longer had legal ownership to the Property.

108. Nationstar violated 15 U.S.C. §1692e(2)(A), which provides that a debt collector may not make a false representation of the "character, amount, or legal statue of any debt," by sending the Mortgage Loan Statements and other correspondence.

109. Nationstar was falsely alleging that the debt was owed despite the fact that such debt had been discharged in Mr. Losch's bankruptcy.

110. Further, Nationstar violated 15 U.S.C. §1692e(10), which provides that a debt collector may not use "any false representation or deceptive mans to collect or attempt to collect any debt."

111. Nationstar sent numerous Mortgage Loan Statements and other correspondence to Plaintiff demanding payment on a debt that was discharged in bankruptcy.

112. Additionally, Nationstar violated 15 U.S.C. §1692f, which provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," by intentionally attempting to collect on this alleged consumer debt when Nationstar knew that the debt had been discharged in Plaintiff's bankruptcy.

113. The statements sent by Nationstar were deceptive, unfair, and unconscionable in that they gave Mr. Losch the impression that the debt remained owed despite the bankruptcy discharge. The statements also reflected a "reinstatement amount due" and included a detachable payment coupon, giving the Plaintiff the impression that he must pay the debt.

114. As a direct and proximate result of Nationstar's actions in violation of the Fair Debt Collection Practices Act, the Plaintiff has suffered statutory and actual damages, including but not limited to embarrassment, fright, shock, nervousness, anxiety, humiliation and emotional and mental pain and anguish

115. Plaintiff has incurred costs, expense and reasonable attorney's fees which would not have been incurred but for Nationstar's violations of the FDCPA. Consequently, the Plaintiff seeks actual damages, statutory damages, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k.

## COUNT IV

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT,
### Fla. Stat. §559.72(9)

116. Mr. Losch incorporates by reference paragraphs one through thirty-two (1-32) and paragraphs thirty-nine through ninety (39-90) of this Complaint as though fully stated herein.

117. The foregoing acts and omissions of Nationstar constitute violations of the FCCPA.

118. Nationstar authorized and generated Mortgage Loan Statements and other correspondence that were mailed to Mr. Losch to collect a debt it knew had been discharged in Mr. Losch's bankruptcy.

119. The debt was not only discharged in Mr. Losch's bankruptcy, but Nationstar knew the bankruptcy trustee sold the property to a third party and that Mr. Losch no longer had legal ownership to the property related to Nationstar's loan.

120. Under the provisions of the Florida Statute §559.72(9), Nationstar is prohibited from claiming or attempting to enforce a debt or existence of some other legal right when Nationstar knows it does not exist.

121. Nationstar violated §559.72(9) by sending Mortage Loan Statements and other correspondence to Mr. Losch in an attempt to enforce a debt that had been discharged in Mr. Losch's bankruptcy.

122. As a direct and proximate result of Nationstar's actions in violation of the Florida Statute, Mr. Losch has suffered statutory and actual damages, including but not limited to, embarrassment, fright, shock, nervousness, anxiety, humiliation and emotional and mental pain and anguish

123. As a result of Nationstar's violations of the FCCPA, Plaintiff is entitled to

actual damages, statutory damages in an amount up to $1,000.00, and reasonable attorney's fees and costs pursuant to Florida Statute §559.77.

124. Additionally, §559.77 provides that a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

## TRIAL BY JURY

Plaintiff is entitled to and herby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Henry Losch, respectfully requests judgment be entered against Defendants, for the following:

A. Actual damages against Nationstar and Experian pursuant to 15 U.S.C. § 1681n(a);

B. Statutory damages against Nationstar and Experian pursuant to 15 U.S.C. § 1681n(a)(1)(A);

C. Punitive damages against Nationstar and Experian pursuant to 15 U.S.C. § 1681n(a)(2);

D. Actual damages against Nationstar pursuant to 15 U.S.C. §1692k(a)(1) and Fla. Stat. §559.77(2);

E. Statutory damages against Nationstar pursuant to 15 U.S.C. §1692k(a)(2)(A) and Fla. Stat. §559.77(2);

F. Punitive damages against Nationstar pursuant to Fla. Stat. §559.77(2);

G. Cost and reasonable attorney's fees against Nationstar pursuant to 15 U.S.C. §§1681n(c), 1681*o*(b), 1692k(3); and Fla. Stat. §559.77(2);

H. Cost and reasonable attorney's fees against Experian pursuant to 15 U.S.C. §§1681n(c), 1681*o*(b); and

I. Awarding Plaintiff any pre-judgment and post-judgment interest as may be

allowed under the law; and

J.　For such other and further relief as the Court may deem just and proper.

Dated:  March 21, 2019.

Respectfully Submitted,

By:*/s/ Aaron M. Swift*
Aaron M. Swift, Esq, FBN 0093088
SWIFT & ISRINGHAUS, P.A.
10460 Roosevelt Blvd. N. Suite 313
St. Petersburg, FL 33716
Telephone: (727) 490-9919
Facsimile: (727) 255-5332
aswift@swift-law.com
*Attorney for Plaintiff Henry Losch*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system. Notice of such filing will be sent to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

                                                  By:*/s/ Aaron M. Swift*
                                                  Aaron M. Swift, Esq, FBN 0093088
                                                  SWIFT & ISRINGHAUS, P.A.
                                                  10460 Roosevelt Blvd. N. Suite 313
                                                  St. Petersburg, FL 33716
                                                  Telephone: (727) 490-9919
                                                  Facsimile: (727) 255-5332
                                                  aswift@swift-law.com
                                                  *Attorney for Plaintiff Henry Losch*