**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| HENRY LOSCH<br>a/k/a John Losch,<br><br>        Plaintiff,<br>  v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br><br>        Defendant. | Case No. 2:18-cv-00809<br><br>Hon. Paul A. Magnuson |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Experian Information Solutions, Inc. ("Experian") respectfully moves for summary judgment on all claims.

## INTRODUCTION

This case presents the question of the scope of the Fair Credit Reporting Act's ("FCRA") reinvestigation requirements when a consumer reporting agency ("CRA") faces conflicting claims about the effect and operation of bankruptcy law. Plaintiff Henry Losch ("Plaintiff") contends that his mortgage debt to Nationstar Mortgage, LLC ("Nationstar") was discharged in his Chapter 7 bankruptcy, despite the fact that he reaffirmed the debt, and did not seek to rescind the reaffirmation until well after the period allowed by law. Nationstar repeatedly informed Experian that Plaintiff was wrong, that the debt remained due and owing. There is no court order stating that the debt was discharged. Plaintiff contends that Experian, despite being a third party, should have searched Plaintiff's bankruptcy docket and decided the "complicated" legal questions that the bankruptcy court itself says are best left to legal experts.

This theory runs counter to the structure of the FCRA and Congress' intent, as well as case law. Nothing in the facts of this case supports this vast expansion of Experian's duties under the FCRA. Instead, the facts demonstrate the reasonableness of the steps Experian took in this case to comply with the FCRA. As explained below, Plaintiff's claims against Experian fail as a matter of law and the Court should grant Experian's Motion.

## BACKGROUND

## I.     THE FAIR CREDIT REPORTING ACT.

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires "consumer reporting agencies" ("CRAs") like Experian to "follow reasonable procedures to assure maximum possible accuracy" of information in "consumer reports," *see* 15 U.S.C. § 1681e(b), as well as to reinvestigate consumer disputes. *See id.* at § 1681i(a). If the reinvestigation does not resolve a dispute, a consumer can add a statement to his consumer reports summarizing the dispute. *See id.* at § 1681i(b)-(c).

In 1996, Congress amended the FCRA to address the roles of CRAs and furnishers regarding consumer disputes. *See* Pub. L. 104-208; *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("In 1996, Congress substantially amended the FCRA . . . Among the changes adopted was a new section governing the responsibilities of so-called "furnishers" of information to CRAs.)(citations omitted). The amendments affirmatively obligate furnishers to provide accurate information and to investigate when a CRA notifies the furnisher of a consumer dispute. *See id.*; *see also* 15 U.S.C. § 1681i(a)(2) (requiring CRAs to forward consumer disputes along with all relevant information to the furnisher); *id.* § 1681s-2(8)(b)

(requiring the furnisher to conduct an investigation upon receipt of notice of the consumer dispute described in § 1681i(a)(2)). Congress specifically explained its rationale:

> Currently, the FCRA does not apply to those entities that furnish information to consumer reporting agencies. The Committee believes that this gap in the FCRA's coverage weakens the accuracy of the consumer reporting system. The consumer reporting agencies may dutifully respond to inquiries from consumers and attempt to verify disputed information by contacting the furnisher. If the furnisher of the information acts irresponsibly in verifying the information however, inaccurate information may remain on the report and the consumer is left with little or no recourse . . . The expansion of the FCRA's coverage makes particular sense because it is creditors and other furnishers of information, not consumer reporting agencies, that have direct access to the facts of a given credit transaction. Ordinarily, the creditor is best situated to determine whether the information it reported was inaccurate or incomplete and to ensure its correction.

S. REP. 103-209, 6 (*available at* 1993 WL 516162).

## II.  CHAPTER 7 OF THE UNITED STATES BANKRUPTCY CODE.

Chapter 7 of the Bankruptcy Code allows a debtor to liquidate their assets to obtain a discharge. *See* 11 U.S.C. §§ 701-784. An appointed trustee is obligated to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." *Id.* at § 704(a)(1). The Chapter 7 debtor can be granted a discharge, which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor . . . ." *Id.* §§ 524(a)(3); 727. A debtor in Chapter 7 may reaffirm a debt, in which case the reaffirmed debt is not discharged. *See id.* § 524(c)(2). A debtor may rescind a reaffirmation agreement "at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later . . . ." (*Id.* § 524(c)(4).

### III.     STATEMENT OF UNDISPUTED MATERIAL FACTS.

#### A.     Plaintiff's Mortgage and Bankruptcy.

1.     In November 2012, Plaintiff obtained a mortgage with CitiMortgage, Inc. ("CitiMortgage") on real property at 1139 Cord Court, Apopka, Florida 32712 (the "Apopka Property"). (Second Amended Complaint ("SAC") ¶¶ 8, 12.) Plaintiff purchased the Apopka Property as his primary residence, but he later began using the Apopka Property as a rental property. (SAC at ¶¶ 9-10, 13.)

2.     On March 24, 2017, Plaintiff filed for Chapter 7 Bankruptcy. (*See In re Losch*, 9:17-bk-02438-FMD (Bankr. M.D. Fla. Mar. 24, 2017)). On May 5, 2017, Plaintiff signed a reaffirmation agreement with CitiMortgage. (SAC ¶ 16; *In re Losch*, Doc. 8 (attached as Exhibit C.). The reaffirmation agreement informed Plaintiff "[y]our reaffirmed debt is not discharged in your bankruptcy case." (*Id.* at 7.) The agreement also explained to Plaintiff that he could rescind the agreement "before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed . . . *as long as your rescind within the time allowed*." (*Id.*)(emphasis added).

3.     Despite Plaintiff's reaffirmation agreement, the Trustee sold the Apopka Property for $8,000. (SAC ¶¶ 24, *In re Losch*, Doc. 24.) The trustee used the proceeds from the sale to pay several of Plaintiff's unsecured creditors, but paid nothing to CitiMortgage. (*See In re Losch*, Doc. 49 (Trustee's Final Account)(attached as Exhibit D.).)

4.     On June 26, 2017, the Bankruptcy Court issued an order granting Plaintiff a discharge. (SAC. ¶ 23; *In re Losch*, Doc. 24 (attached as Exhibit E.)). The discharge order does not detail what debts are discharged, but does explain that reaffirmed debts are not discharged.

(*Id.* at 2.) The discharge order also warns the reader that "**Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case**." (*Id.* (emphasis original).)

5.      In July 2017, CitiMortgage transferred the mortgage to Nationstar (hereafter the "Nationstar Account"). (SAC ¶ 25.) Despite receiving notice that his mortgage had transferred to Nationstar, Plaintiff did not file any amended bankruptcy schedules or any transfer of claims. (*See In re Losch*; Exhibit. B at 47:22-48:22 (Deposition of H. Losch).) Nationstar does not appear on the claims register or on the list of creditors. (*See* Exhibit F (Claims Register); Exhibit G (List of creditors).)

6.      Starting in August 2017, Nationstar began sending Plaintiff statements for the mortgage account, indicating that he was past-due. (*See* Exhibit H (August 2017 Nationstar statement).) These statements show a principle balance of $139,853 with an overdue payment amount that increased every month. (*See id*, Exhibit I (March 2018 Nationstar statement); Exhibit J (June 2018 Nationstar statement).

7.      On November 20, 2017, more than six months after executing his reaffirmation agreement with CitiMortgage, Plaintiff filed a motion to set aside his discharge and to rescind the reaffirmation agreement. (SAC ¶ 29.) Plaintiff filed an amended version of this motion on February 7, 2018. (*Id.* at 30 (attached as Exhibit K).) The Court granted the motion on April 2, 2018. (*See In re Losch,* Doc. 39 (attached as Exhibit L).) Neither the Amended Motion nor the Court's order states whether the Nationstar Account would be discharged upon rescission, saying only that the discharge would be re-imposed in thirty days. (*See* Ex. L at 2.) On April 5, 2018, Plaintiff filed a notice of rescission. (SAC ¶ 32.)

**B.     Credit Reporting and Plaintiff's Dispute.**

8.      In May 2018, Plaintiff obtained a copy of his Experian credit report. (Exhibit A at ¶ 16.) The May 2018 report showed that Nationstar was reporting that the Account was open, with a balance of $139,853, and an amount past due of $10,006 as of March 2018. (*See* Exhibit M at 3 (Excerpt of May 25, 2018 disclosure).) Nationstar's March 2018 statement shows the same balance, and lists $10,006.74 as the amount of overdue payments. (Ex. I at 1.) The CitiMortgage account was reporting as closed. (Ex. M at 2.)

9.      On June 19, 2018, Experian received a dispute letter from Plaintiff stating "We filed a reaffirmation of this mortgage, but we rescinded the reaffirmation in 2018 and the court approved that so I no longer own this debt." (Ex. A at ¶ 18; Exhibit N (Plaintiff's Dispute Letter).) The Letter did not include any of the documents from Plaintiff's bankruptcy or provide docket information. (Ex. A at ¶ 18.)

10.     On June 26, 2018 Experian processed Plaintiff's dispute. (*Id.* at ¶ 19.) Because Plaintiff claimed that the debt was discharged and that he no longer owned the debt, Experian could not internally resolve the dispute, and sent an Automated Consumer Data Verification ("ACDV") form to Nationstar. (*Id.* at ¶¶ 9-10, 19.) The ACDV attached Plaintiff's dispute letter and indicated that Plaintiff was disputing the status and claiming that the account should report that it was discharged in his Chapter 7 bankruptcy. (*Id.* at ¶¶ 14-15, 20.)

11.     On July 11, 2018, Nationstar responded to the ACDV. (*Id.* at ¶ 21.) Nationstar confirmed that the balance was correct, and updated the amount past due and added additional late payment notations in the account history. (*Id.*; Exhibit O (Excerpt of July 12, 2018 Dispute Results).) The ACDV did not instruct Experian to report the Nationstar Account as discharged.

(*Id.* at Ex. A at ¶ 21.)  Nationstar's June 2018 statement shows the same balance and amount past due. (Ex. J.)

12.      On January 19, 2019, Nationstar sent Experian an Automated Universal Data ("AUD") form. (*Id.* at ¶ 24.) Although the Nationstar Account was not reporting as included or discharged in Plaintiff's bankruptcy, the January 19, 2019 AUD specifically instructed Experian to remove any reference to Plaintiff's bankruptcy from the account, ensuring that the Account was reporting as open and past due. (*Id.* at ¶ 25.)

13.      On February 25, 2019, Experian updated the Nationstar Account to report as discharged in Plaintiff's bankruptcy. (*Id.* at ¶ 26.)

**C.      Plaintiff's Damages.**

14.      Plaintiff has not produced any evidence of credit denials in this case. Plaintiff testified that he has been denied credit, but only in the time period after Experian updated the reporting of the Nationstar Account, that one of the denials was due to his bankruptcy and that none of the denials referenced the Nationstar Account. (*Id.* at 33:2-36:4; Ex. A at ¶ 26.) Plaintiff has not sought any kind of treatment for emotional distress. (*Id.* at 89:22-90:5)

15.      In written discovery, Plaintiff claimed that he had spent over 400 hours trying to address his Experian credit report, but at deposition he admitted that he spent at most 1 hour writing and mailing the dispute and the other remaining time was spent addressing Nationstar. (*See* Exhibit P at 2 (Plaintiff's Supplemental Interrogatory Responses); Ex. B at 90:6-91:9.)

**IV.      PLAINTIFF'S LEGAL CLAIMS AGAINST EXPERIAN**

Plaintiff alleges that Experian violated § 1681e(b), and § 1681i(a), and that these violations were both negligent and willful. (SAC at ¶¶ 96-103.)

## LEGAL STANDARD.

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to 'come forward with specific facts showing that there is a *genuine issue for trial.*'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

## I.    EXPERIAN'S REPORTING WAS ACCURATE.

To prevail on his claims, Plaintiff must prove Experian furnished inaccurate information in his credit report, or that his credit file at Experian contained inaccurate information. *See*, *e.g.*, *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156–60 (11th Cir. 1991). The inaccuracy must be factual, and not depend on "disputed legal questions." *See*, *e.g.*, *Cahlin* 936 F.2d 1151, 1156–60 (11th Cir. 1991) ("a [§ 1681i] claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional") (emphasis original); *Chiang*, 595 F.3d at 38 ("We emphasize that, just as in suits against CRAs, a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions.")(emphasis in original).

### A.        Experian's Reporting Was Factually Accurate.

Plaintiff's claims fail as a matter of law because Experian's reporting of the Nationstar

Account was factually accurate. Nationstar's records show that the Account was open, with a

balance of $139,853, and an amount past due that was increasing each month. (*See* Exs. H, I,

J.) These are the same facts that Experian was reporting. (*Compare* Ex. J *with* Ex. O.) Plaintiff

has not produced evidence to show that this information was factually incorrect. (*Compare* Ex.

B at 28:23-298, 79:22-80:24 (testifying that Plaintiff believed the reporting was incorrect due

to the trustee's sale of the property) *with* Ex. D at 4 (showing $0 paid to CitiMortgage).)

Plaintiff's theory is not that Experian's reporting was factually incorrect, but rather that

Experian's reporting of the Nationstar Account was inaccurate because it was not reporting as

discharged in bankruptcy. (*See* SAC ¶ 30.) But even assuming that the Nationstar Account was

discharged, that does not render Experian's reporting factually inaccurate. A discharge is a

"permanent injunction" that prohibits the creditor from collecting on the debt. *See* 11 U.S.C. §

524(a)(3); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). The bankruptcy discharge

thus acts as a "legal defense to payment." *Perry v. Toyota Motor Credit Corp.*, No.

1:18CV00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) ("[plaintiff's] claims present

a legal defense to payment — he is not liable for the lease he assumed because he did not

reaffirm it, and thus it was included in his bankruptcy discharge).[1] But the mere fact that

---

[1] Other courts have noted that it is a mistaken understanding of a bankruptcy discharge to believe that it nullifies the debt. *See In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) ("the Court cannot conclude that—the sole act of reporting a debt, whose existence was never extinguished by the bankruptcy discharge, violates the discharge injunction. All that is being reported is the truth."), *but see* Fed'l Trade Comm'n, Forty Years of Experience with the Fair Credit Reporting Act, 68 (July 2011) (stating that discharged debts should report with a zero balance to reflect that the consumer is not personally liable).

Plaintiff may have a legal defense to payment does not make Experian's otherwise accurate reporting inaccurate. *See*, *e.g.*, *Hunt v. JP Morgan Chase, N.A.*, 770 Fed. App'x 452 (11th Cir. 2019) (holding that claim of inaccurate credit reporting failed where consumer alleged that debt was accelerated in foreclosure such that plaintiff was not obligated to pay because "even assuming [plaintiff] ultimately turned out to be correct about his legal obligation to pay, his FCRA argument fails nonetheless. A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions . . . "); *Padgett v. Clarity Servs., Inc.*, No. 8:18-CV-1918-T-30CPT, 2018 WL 6628274, at *2 (M.D. Fla. Dec. 13, 2018) (allegations that a loan violated state usury laws and were thus void and uncollectable did not present a claim of factually inaccurate reporting under the FCRA); *Perry*, 2019 WL 332813, at *5 (allegations that lease was discharged in Chapter 7 bankruptcy by virtue of consumer's surrender of collateral did not render the reporting factually inaccurate). Because Plaintiff has failed to identify any factually inaccurate information, his claims fail and Experian is entitled to summary judgment. *See*, *e.g.*, *Bailey v. Equifax Credit Info. Servs., Inc.*, No. 114CV00797MHCJCF, 2016 WL 11540113, at *20 (N.D. Ga. Nov. 28, 2016), report and recommendation adopted, No. 1:14-CV-797-MHC, 2017 WL 10728913 (N.D. Ga. Jan. 9, 2017) (recommending summary judgment be granted where CRA was reporting the same information contained in the furnisher's files).

> **B.    Whether the Nationstar Account is Discharged is a Disputed Legal Question.**

That Plaintiff may have a "legal defense to payment" does not present a viable claim against Experian. Twice in the last year the Eleventh Circuit has confirmed this result. In *Hunt*, 770 Fed. App'x 452, the plaintiff claimed it was inaccurate for a bank to report the plaintiff as past due after the bank had accelerated the loan in order to foreclose. 770 Fed. App'x at 458.

The Eleventh Circuit upheld the dismissal of plaintiff's FCRA claim against the bank, explaining that a consumer must offer more than disputed legal questions to present an FCRA claim." *Id.* More recently, in *Williams v. Capital One Bank (USA) N.A.*, No. 18-14143, 2019 WL 4187363, at *4 (11th Cir. Sept. 4, 2019), the Eleventh Circuit upheld summary judgment for a CRA where it reported a civil judgment where the plaintiff disputed that he was responsible for the debt underlying the judgment. The Court explained this claim failed, in part because "[i]t is in the nature of a civil judgment that the party against whom the judgment was entered may dispute the basis for the judgment or the amount awarded." *Id.* at *4.

It is clear that whether the Nationstar Account was discharged is a disputed legal issue, not a factual matter. Initially, it is far from clear that Plaintiff's liability to CitiMortgage was extinguished. The Bankruptcy Code allows a debtor to rescind a reaffirmation agreement within sixty days or prior to the discharge. 11 U.S.C. § 524(c) Plaintiff did not do so. Bankruptcy courts facing requests to rescind a reaffirmation agreement after this period have concluded that they do not have the power to do so. *See*, *e.g.*, *In re Griffiths*, No. 6:11-BK-05839-ABB, 2012 WL 293829, at *1 (Bankr. M.D. Fla. Jan. 9, 2012) (holding that the bankruptcy court is "statutorily prohibited" from allowing a recession filed more than 60 days after the reaffirmation was filed and holding that it could not revoke the discharge in order to rescind the reaffirmation agreement); *In re Ripple*, 242 B.R. 60, 65 (Bankr. M.D. Fla. 1999) ("The Bankruptcy Code does not provide this Court authority to set aside a reaffirmation agreement after the time has passed."); *In re Dabbs*, 128 B.R. 307, 309 (Bankr. N.D. Fla. 1991)(declining to hold a hearing after the time periods in 11 U.S.C. § 524(c)(4) had run because "[a]t that point the debtor could not rescind the agreement. The hearing would be

nothing more than telling the debtor, 'here's what you did, but the time has past [sic] for you or me to do anything about it.'"). Crucially, the bankruptcy court's order granting Plaintiff's motion is *entirely silent* as to whether the debt would be discharged. (*See* Ex. L at 2.)[2] Even the discharge order agrees that the "law is complicated" and the reader should "consult an attorney to determine the exact effect" of the order. (Ex. E at 2.)

Moreover, the bankruptcy docket provides little reason to believe the Nationstar Account was discharged. Nationstar is not listed in the bankruptcy schedules, the claims register, or the list of creditors. (*See* Exs. F,G; *see also* 11 U.S.C. § 523(a)(3)(unscheduled debts are not discharged).) There is no court order stating that the Nationstar Account was discharged. Nor is it clear that the procedure Plaintiff employed for rescinding his reaffirmation was effective as to Nationstar who had obtained the debt *after* Plaintiff had agreed to reaffirm it. For its part, Nationstar twice informed Experian that it did not believe the Account was discharged. (*See* Ex. A at ¶¶ 21, 25) It thus remains an open legal question whether Plaintiff or Nationstar is correct.

## II. PLAINTIFF CANNOT SHOW THAT EXPERIAN FURNISHED A CONSUMER REPORT INCLUDING THE NATIONSTAR ACCOUNT.

Plaintiff's § 1681e(b) claim fails for an additional reason. There is no evidence in the record that Experian ever furnished a consumer report that included the Nationstar Account. *See*, *e.g.*, *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir.) (explaining that

---

[2] Concluding that the CitiMortgage debt was discharged likely means concluding that the bankruptcy court's order ran afoul of the Bankruptcy Code While it is true that valid court orders are effective, even where they contain legal error, *see United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010), as the bankruptcy court's order does not state whether the Nationstar Account is discharged, there is no need to determine if the order was in error.

liability under § 1681e(b) requires a showing that a CRA furnished an inaccurate consumer report, but liability under § 1681i(a) does not).

Experian has no record of any hard inquiries on Plaintiff's file, which are the type of inquiry most commonly associated with a consumer report prepared for evaluating a consumer's credit worthiness. (*See* Ex. A at ¶¶ 27-28).) Experian does not maintain copies of the consumer reports it provides to third parties (*id.* at ¶ 30), and Plaintiff has not produced any in discovery, so there is no evidence to show that Experian furnished a consumer report to a third party that included the Nationstar Account. Yet creditors must notify consumers when they take an adverse action after obtaining a consumer report, *see* 15 U.S.C. 1681m(a), so Plaintiff likely would have known if anyone obtained his Experian consumer report. (*See also* Ex. B at 35:21-36:4.) Without this evidence, Plaintiff's § 1681e(b) claim fails.

## III.  EXPERIAN'S PROCEDURES WERE REASONABLE AS A MATTER OF LAW.

Because the FCRA does not impose strict liability, Experian is also entitled to summary judgment because there is no evidence to show that the procedures at issue in this case were unreasonable. *Cahlin*, 936 F. 2d at 1156. While this is often a fact issue, there is no evidence in this case to support that conclusion here.

### A.  Experian's Reliance on Nationstar Prior to Plaintiff's Dispute Is Reasonable as a Matter of Law.

Courts have repeatedly held that it is reasonable as a matter of law for CRAs like Experian to report the information they receive from presumptively reliable sources like financial institutions until they receive notice from the consumer that the source is unreliable *See*, *e.g.*, *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975

(M.D. Fla. 1985)(granting summary judgment on § 1681e(b) claim where "the plaintiff has simply presented no evidence indicating that the defendant's initial reliance on the information provided by FMCC was not reasonable."); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (finding it reasonable as a matter of law for CRAs to report the information obtained from financial institutions "unless there was prior notice from the consumer that the information might be inaccurate"); *see also* Fed'l Trade Comm'n, Forty Years with the FCRA, 66 (explaining that § 1681e(b) requires a CRA to "accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face").

Experian has procedures to vet furnishers and ensure that they provide accurate information. (*See* Ex. A at ¶¶ 6-7.) Until Experian received Plaintiff's dispute in June 2018, there is no evidence to suggest that Experian could not rely on Nationstar as a source of information. Thus any claim under § 1681e(b) prior to Plaintiff's dispute fails.

**B.    Experian Reasonably Reinvestigated Plaintiff's Dispute.**

**1.    Experian is Required to Reinvestigate Consumer Disputes, Not to Investigate Them.**

The heart of Plaintiff's claims against Experian is his mistaken claim that Experian is required to conduct an independent investigation upon receipt of a consumer's dispute. (*See* Exhibit O at 9-10 (Plaintiffs Responses to Experian's Interrogatory No. 7, stating in part "If a consumer disputes the accuracy of information in a consumer report, the CRA must conduct an investigation . . . The important term, 'reinvestigate' has essentially the same meaning as 'investigate.'").) This theory misconstrues the FCRA and Experian's role in reporting consumer credit information. Section 1681i(a) requires Experian to conduct a *reinvestigation*

when a consumer submits a dispute. By contrast, § 1681s-2, requires the furnisher to conduct

an *investigation*. "[W]hen Congress uses different language in similar sections, it intends

different meanings." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th

Cir.)(quoting *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998)).

The Ninth Circuit specifically addressed Plaintiff's theory:

> [I]f anything, the "reasonable" qualifier with regard to *re* investigations by CRAs signals
> a *limitation* on the CRAs' duty, not an expansion of it beyond what "investigation" itself
> would signal. And, indeed, the statute goes on to spell out the CRA's investigative duty in
> some detail, requiring, inter alia, that the CRA provide notification of the dispute within
> five business days of receipt of notice of a dispute. The furnisher's investigation obligation
> under § 1681 is triggered by receiving the CRA notification, required as a central aspect of
> the CRA's own investigation, and includes the obligation to "report the results of [its]
> investigation to the [CRA]." In other words, the CRA's "reasonable reinvestigation"
> consists largely of triggering the investigation by the furnisher . . . With respect to the
> accuracy of disputed information, the CRA is a third party, lacking any direct relationship
> with the consumer, and its responsibility is to "*re* investigate" a matter once already
> investigated in the first place . . . if anything, the "reasonable" qualifier attached to a CRA's
> duty to reinvestigate limits its obligations on account of its third-party status. . . .

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156–57 (9th Cir.

2009)(citations omitted); *see also Padgett*, 2018 WL 6628274 at *3; *Paul v. Experian Info.

Sols., Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011)("As an initial matter, Paul repeatedly

refers to Experian's duty to conduct an investigation. This assertion misstates the statute and

conflates a CRA's obligation to reinvestigate and a furnisher's obligation to investigate.").

There is no support in the FCRA for Plaintiff's sweeping view of Experian's

obligations. In fact, Congress stated the opposite, explaining that "it is creditors and other

furnishers of information, not consumer reporting agencies, that have direct access to the facts

of a given credit transaction. Ordinarily, the creditor is best situated to determine whether the

information it reported was inaccurate or incomplete and to ensure its correction." S. REP.

103-209, 6 (*available at* 1993 WL 516162). A correct understanding of Experian's duty to *reinvestigate* shows that it fulfilled that duty in this case.

### 2. Experian Is Not Required to Determine Which Debts Are Discharged in a Consumer's Chapter 7 Bankruptcy.

In Plaintiff's view, Experian was required to determine whether Plaintiff was correct that the debt was discharged. Virtually all applicable case law holds to the contrary. As described above, the Eleventh Circuit has addressed similar issues and held the FCRA does not require defendants to settle disputed legal issues between a consumer and creditor. *See Hunt*, 770 Fed. App'x 452; *Williams v. Capital One Bank* , 2019 WL 4187363. Nearly thirty years ago, in *Cahlin*, the Eleventh Circuit rejected Plaintiff's view in a case where a consumer claimed his credit report was inaccurate because it reported that a creditor had charged off a lease, which Plaintiff had terminated early and then settled a collection dispute with the creditor. *See* 936 F.3d at 1154-55. Despite the fact that the creditor had charged off the debt, the plaintiff contended that the account should never have been reported as derogatory. *See id.* at 1159. The Court held that because the CRAs reporting accurately reflected the facts as they occurred, Plaintiff's claims failed. *See id.* at 1159.

Courts have also explained that because CRAs are third parties to consumer credit information, they are not required to settle disputes between consumers and their creditors about the legal status of the debt. *See, e.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (whether consumer was responsible for mortgage was "not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency [] is neither qualified nor obligated to resolve under the FCRA"); *Wright v.*

*Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015)(legal validity of a tax lien was not an issue CRA was obligated to resolve).

*Humphrey v. Trans Union, LLC*, 759 Fed.App'x 484 (7th Cir. 2019) is especially instructive. In *Humphrey*, the consumer claimed that the CRAs were inaccurately reporting his student loan debt, which had been discharged through a disability discharge. *See* 759 Fed.App'x at 486. The Seventh Circuit upheld the dismissal of the claims, explaining:

> Humphrey's allegation that he was not required to make payments on his student loans required a legal determination about whether his disability-discharge applications required Navient to cease collections. As a major student-loan servicer, Navient was in a better position than the CRAs to make this determination. On receiving notice of Humphrey's dispute, the CRAs repeatedly contacted Navient to verify that Humphrey had in fact incurred the loans, informed Navient of the nature of the dispute, and supplied Humphrey with the results of its investigation. That was a reasonable reinvestigation, considering that the CRAs are not a tribunal sitting to resolve legal disputes . . . .

*Humphrey*, 759 F. App'x 484, 488 (7th Cir. 2019) (citations omitted).

Unsurprisingly, courts have specifically applied this principle to cases dealing with claims that a debt was discharged in bankruptcy, holding that:

> requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's [] bankruptcy would impose an unfairly heavy burden on that party. Plaintiff's discharge order does not specify which particular debts were discharged, and even states that the reader "may want to consult an attorney to determine the exact effect of the discharge in this case." . . . .This is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer.

*Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016) (citations omitted); *see also Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *3, n. 4 (N.D. Cal. Apr. 26, 2017)("The Court similarly agrees that Equifax is not capable or required to 'resolv[e] a legal dispute between Plaintiff and her creditors' about the confirmation plan's effect on the legal status of her debt. The law does not require the CRAs

to act as a tribunal or 'scour' a bankruptcy file and make judgments about which debts are included.")(citation omitted).

The murky nature of Plaintiff's bankruptcy supports the same conclusion here. As noted above, the Bankruptcy Code and case law suggest that Plaintiff *could not have* rescinded his reaffirmation as he seems to have done. *See supra* at 11-12. If Experian had a duty to consult the bankruptcy docket, it would, at most, show that that Plaintiff had rescinded his reaffirmation with CitiMortgage nearly a year after it was filed and would show that Nationstar was never even listed as a creditor in Plaintiff's bankruptcy. There is no entry informing the reader what debts are discharged, let alone that the Nationstar Account was discharged. Moreover, Experian and Nationstar stand in vastly different positions with respect to Plaintiff and his bankruptcy. Experian has no financial or legal interest in Plaintiff's bankruptcy. By contrast, Nationstar's ability to receive payment for the loan, or to run the risk of violating the discharge injunction, is directly impacted by Plaintiff's bankruptcy. As in *Humphrey*, Nationstar was in a much better position than Experian to make the determination as to whether the debt was discharged.

In the end, as Plaintiff himself acknowledged, determining whether the Nationstar Account was discharged is a complicated matter of law. (*See* Ex. B at 54:2-13.) It would be unfair and unreasonable to expect a third party like Experian to determine what debts are discharged, especially when Nationstar stood in a far better position to determine that fact.

### 3.   Experian's Reinvestigation Was Reasonable as a Matter of Law.

"To prevail on a claim for 15 U.S.C. § 1681i(a), a consumer must show that . . . the agency failed to respond or conduct a reasonable reinvestigation of the disputed items; (5) the

failure to reinvestigate caused the consumer to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Bermudez v. Equifax Info. Servs., LLC*, No. 607CV-1492-ORL-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008) (citation omitted.) Experian is still entitled to summary judgment on Plaintiff's § 1681i claims because there is no evidence that Experian failed to conduct a reasonable reinvestigation.

When Plaintiff contacted Experian to dispute the Nationstar Account, Experian reviewed his letter, determined that it could not simply make the change he was requesting, and so forwarded his letter to Nationstar along with an ACDV form that specifically noted that Plaintiff was claiming that the debt was discharged in his Chapter 7 bankruptcy. (Ex. A at ¶¶ 19-21.) Courts in this district, and across the country have repeatedly held that sending an ACDV to the data furnisher is reasonable as a matter of law. *See, e.g.*, *Bermudez*, 2008 WL 5235161 (granting summary judgment where CRA sent an ACDV); *Paul*, 793 F. Supp. At 1103-04 (same); *Lee v. Experian Info. Sols.*, No. 02 C 8424, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003) ("the CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation");

It is true that courts have also held that, "[i]n some circumstances, a credit reporting agency may have a duty to go beyond the original source of its information to verify the accuracy of information, which will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable." *Lee v. Sec. Check, LLC*, No. 3:09-CV-421-J-12TEM, 2010 WL 3075673, at *11 (M.D. Fla. Aug. 5, 2010). Courts have also explained "It is axiomatic that procedures must be reasonable with respect to the particular

dispute presented." *Lee*, 2010 WL 3075673 at *12. There is no evidence to support the conclusion that Experian failed to reasonably reinvestigate Plaintiff's dispute in this case.

In this case, Experian specifically reviewed Plaintiff's dispute letter, determined that it could not make the requested update, and so forwarded that letter onto Nationstar so that they could consult their records and verify the disputed information. (Ex. A at ¶¶ 18-22.) This is precisely what § 1681i(a) requires, and what Congress intended when it enacted § 1681s-2. Nationstar was in a far better position to evaluate its records and determine if Plaintiff was correct. *See*, *e.g.*, *Carvalho*, 629 F.3d at 891 ("a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher, which 'stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation.'") (quoting *Gorman*, 584 F.3d at 1156); *Humphrey*, 759 F. App'x 488. Indeed, this is *exactly what Plaintiff said he expected Experian to do*. (*See* Ex. B at 68:9-18 (Q. What do you think they should do when they get a dispute like this? What are they supposed to do? A. I don't know. Check with Nationstar . . . I would think that one of the first things they might do is contact Nationstar.") In light of the confusing nature of Plaintiff's bankruptcy, this case is a paradigmatic example of why contacting the furnisher, who has the first-hand relationship, the underlying records, and the financial interests is often sufficient to comply with § 1681i(a).

### 4.  The FCRA Provides a Specific Remedy to Plaintiff.

Congress did not expect that the reinvestigation process would resolve all disputes, and added a provision that addresses cases like this one, allowing consumers to file a brief statement setting forth the nature of the dispute." 15 U.S.C § 1681i(b). The Eleventh Circuit

has specifically noted the aptness of this provision in cases where the consumer believes that

the reporting does not tell the whole story:

> In such cases, we believe that Congress provided a unique remedy for consumers to dispute how a particular dispute is characterized or interpreted on their credit report by allowing them to enclose a statement as to their version of the dispute. In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account.

*Cahlin*, 936 F.2d at 1160, n. 23 (Citations Omitted); *Carvalho*, 629 F.3d at 892.

It would have been a simple matter for Plaintiff to contact Experian and add a statement

stating that he believed the Nationstar Account was discharged in his bankruptcy, allowing any

creditors to decide for themselves if that impacts their view of Plaintiff's creditworthiness.

That Plaintiff chose not to further supports the conclusion that Experian is not liable here.

## IV.   PLAINTIFF CANNOT SHOW THAT EXPERIAN CAUSED HIM ANY ACTUAL DAMAGE.

As with all negligence claims, Plaintiff's claims under 15 U.S.C. § 1681o require him

to prove that Experian caused him actual damage. "It is well established that a plaintiff suing

under the FCRA shoulders the burden of demonstrating the existence of damages resulting

from an alleged FCRA violation; and, thus, the failure of an FCRA plaintiff 'to produce

evidence of damage resulting from a FCRA violation mandates summary judgment.'"

*Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1262–63 (S.D. Fla. 2009) (quoting

*Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).

Plaintiff has entirely failed to make a showing that Experian caused him any actual

damages. There is no evidence that Plaintiff was denied credit based on Experian's reporting

of the Nationstar Account. Plaintiff has not produced any denial letters, and the only instances

he testified to occurred *after* Experian updated the Nationstar Account to report as discharged.

Likewise, Plaintiff's written discovery claimed "loss of credit opportunities," but he has offered no evidence as to what opportunities those were, and whether the alleged "loss" had anything to do with the Nationstar Account. (Ex. B at 35:21-36:4.) Of course, given that discharging a debt in bankruptcy is itself a negative event, it is doubtful that that the reporting harmed his creditworthiness at all. *See*, *e.g.*, *Jaras v. Equifax Inc.*, 766 F. App'x 492, 494 (9th Cir. 2019)("Plaintiffs here do not make any allegations about how the alleged misstatements in their credit reports would affect any transaction they tried to enter or plan to try to enter— and it is not obvious that they would, given that Plaintiffs' bankruptcies themselves cause them to have lower credit scores with or without the alleged misstatements.").

That leaves Plaintiff with a claim for emotional distress. And while emotional distress can be recoverable under the FCRA, there is no evidence to support that finding here. In order to recover emotional distress damages, courts in this Circuit, and others around the country have explained that self-serving testimony is not enough. Instead, "[a] plaintiff must first show proof of an actual injury, such as evidence of the injured party's conduct and observations of others, for damages to be awarded for mental or emotional distress under the FCRA." *Taylor v. Corelogic Saferent, LLC*, No. 113CV03435CAPJFK, 2014 WL 11930592, at *7 (N.D. Ga. Oct. 23, 2014)(quoting *Jordan v. Trans Union*, LLC, No. 1:05-cv-0305, 2006 WL 1663324 at * 6 and collecting cases); *Rambarran*, 609 F. Supp. 2d at 1267 (S.D. Fla. 2009) (analyzing the standard for denying summary judgment in light of emotional distress claims and finding that a stipulation that "Plaintiff has failed to establish emotional distress damages in this case because Plaintiff provided only conclusory and self-serving statements regarding his alleged emotional distress" was "consistent with the case law of this Circuit and other Circuits");

*Norris v. Ford Motor Credit Co.*, 198 F. Supp. 2d 1070, 1073 (D. Minn. 2002)(finding affidavit insufficient to support claims of emotional distress)(J. Magnuson);*Sarver*, 390 F.3d at 971 ("We have maintained a strict standard for a finding of emotional damage because they are so easy to manufacture.")(citation omitted).

Plaintiff has not produced any evidence of his emotional distress beyond his own testimony. He testified that, at most, he spent an hour sending the dispute letter to Experian, there is no evidence that anyone besides Plaintiff even viewed the Nationstar Account on his credit report, and Plaintiff admitted that he has not sought any kind of treatment for his alleged distress. This is exactly the same set of circumstances in which courts grant summary judgment. *See Taylor*, 2014 WL 11930592 at *7; *Rambarran*, 609 F. Supp 2d. at 1267. The court should do so here as well.

## V.     PLAINTIFF CANNOT PROVE ANY WILLFUL VIOLATIONS.

At a minimum, Experian is entitled to summary judgment on Plaintiff's claims that Experian's alleged violations were willful. To establish a willful violation Plaintiff must show "that [Experian] either knowingly or recklessly violated [the FCRA]". *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)(citations omitted). A CRA recklessly violates the Act if it takes an action that "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. A willful violation cannot be found where a defendant "followed an interpretation that could reasonably have found support in the courts . . ." *Safeco*, 551 U.S. at 70, n. 20.

Experian's purported violations cannot be willful for at least two reasons. First, the Eleventh Circuit has held that where a CRA's reporting is technically accurate, it cannot have willfully violated the FCRA by reporting that information. *See Pedro*, 868 F.3d. at 1280-81 ("Although the better reading of the Act requires that credit reports be both accurate and not misleading, we cannot say that reading the Act to require only technical accuracy was objectively unreasonable.") Because there is no dispute that Experian's reporting of the Nationstar Account was technically accurate as the information Experian was reporting was true, Experian cannot have willfully violated the FCRA by reporting that information.

Second, as explained above, courts have repeatedly upheld Experian's reliance of financial institutions, and held that Experian's use of ACDVs to conduct reinvestigations is reasonable and that Experian is not required to determine what debts are discharged in a consumer's bankruptcy. *See supra* at 14, 19-20. It cannot have been a willful violation for Experian to comply with reinvestigation procedures that other courts have held were reasonable. See, *e.g. Garrett v. Experian Info. Sols., Inc.*, No. 11-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012)(collecting cases as stating "many courts have held, the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law . . .as the practice of sending ACDVs to the original source is reasonable, the Court finds, as a matter of law, that Defendant could not have been committing a *willful* violation of its duty to reinvestigate.")(emphasis original)(citations omitted). Even where courts hold that there is a jury question on a negligence claim where the CRA's reinvestigation involved solely contacting the furnisher, they routinely grant summary judgment to the CRA on allegations of willful violations. *See*, *e.g.*, *Collins*, 775 F.3d at 1336 (upholding summary judgment for

Experian on claims that Experian willfully violated § 1681i(a) and explaining "[t]aking no steps other than contacting only Equable with an ACDV form regarding the disputed entry might have been negligent, but willfulness or recklessness is a higher standard that has not been met in this case."); *Lee v. Sec. Check, LLC*, No. 3:09-CV-421-J-12TEM, 2010 WL 3075673, at *13 (M.D. Fla. Aug. 5, 2010)("while a question remains regarding whether Experian acted negligently, the undisputed facts cannot establish that Experian willfully violated the FCRA as a matter of law."). Certainly Experian cannot have willfully violated the FCRA by taking the exact action Plaintiff expected them to take. (*See* Ex. B 68:9-18.)

Because Experian's actions in this case fall well-within the text of the FCRA as well as case-law, it is entitled to summary judgment on Plaintiff's claims arising under § 1681n.

## CONCLUSION

For the foregoing reasons, Experian respectfully requests the Court grant Experian's Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

Dated: November 27, 2019

/s/ *Maria H. Ruiz*
Maria H. Ruiz (FBN 182923)
KASOWITZ BENSON TORRES LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (786) 587-1044
Fax: (305) 675-2601
mruiz@kasowitz.com

*Counsel for Defendant Experian
Information Solutions, Inc.*

Christopher A. Hall
*Pro Hac Vice*
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL 60601.1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
chall@jonesday.com

*Counsel for Defendant Experian
Information Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or mail.

*/s/ Maria H. Ruiz*
Maria H. Ruiz