[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10695

_____

D.C. Docket No. 2:18-cv-00809-PAM-MRM

HENRY LOSCH,
a.k.a. John Losch,

                                                               Plaintiff - Appellant,

versus

NATIONSTAR MORTGAGE LLC,
d.b.a. Cooper, Mr.,

                                                                Defendant,

EXPERIAN INFORMATION SOLUTIONS, INC.,

                                                                Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 28, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

NEWSOM, Circuit Judge:

In 2017, Henry Losch found himself in dire financial straits, so he filed for Chapter 7 bankruptcy and discharged his debts—including the mortgage on his home. Not long thereafter, though, Losch discovered that his credit report still showed that he was delinquent on the mortgage. Concerned, he contacted the reporting agency, Experian, to correct the error. But Experian's own inquiry with its data furnisher led it to confirm—inaccurately, as it turns out—its previous reporting. It thus continued to report the outstanding mortgage. Losch filed suit under the Fair Credit Reporting Act.

On appeal, we must decide whether Experian violated the FCRA's requirements that a credit-reporting agency (1) employ "reasonable procedures to assure maximum possible accuracy of the information concerning the individual" when preparing a credit report, 15 U.S.C. § 1681e(b), and (2) conduct a "reasonable reinvestigation" of disputed information when notified of a potential inaccuracy, *id.* § 1681i(a). The district court held that Experian didn't violate the FRCA and granted it summary judgment. Because we disagree that the measures that Experian took after Losch notified it of the inaccuracy in his report were "reasonable" as a matter of law, we vacate the district court's judgment and remand.

# I

## A

In 2012, Henry Losch took out a mortgage through CitiMortgage on his home in Apopka, Florida.  Five years later, he declared Chapter 7 bankruptcy.  In an attempt to keep his house, however, Losch reaffirmed his mortgage, and thus retained the debt, instead of allowing the bankruptcy trustee to liquidate it.  Even so, despite the reaffirmation, and for reasons unexplained in this litigation, the trustee subsequently sold the Apopka property.  CitiMortgage then transferred the servicing of Losch's mortgage to Nationstar, which began sending Losch past-due notices.

Those notices prompted Losch—who no longer had any reason to hold onto the mortgage—to move the bankruptcy court to rescind his reaffirmation.  Although his motion came after the statutory deadline, the bankruptcy court granted it, and Losch rescinded the reaffirmation.

Believing that he had a "fresh start," Losch was dismayed when he found that his Experian credit report still showed that he had a debt with Nationstar for nearly $140,000, with a past-due balance of more than $10,000.  In June 2018, he wrote to Experian to dispute the report:

> I am writing this letter to dispute the Nationstar Mortgage account - account no. 614148XXXX.  This mortgage was discharged in my chapter 7 bankruptcy that I filed in 2017.  We filed a reaffirmation of this mortgage, but we rescinded the reaffirmation in 2018 and the

3

court approved that so I no longer own this debt. Please correct the information on my credit report.

After receiving Losch's dispute letter, Experian sent an automated consumer data verification (ACDV) form to the furnisher, Nationstar, seeking to verify the alleged debt.[1] Nationstar responded that the loan balance was correct and added past-due amounts that had since accumulated. Experian then relayed the same information to Losch. Experian took no further steps to verify the debt on Losch's account, and it didn't correct Losch's credit report until February 2019, after this litigation had commenced.

**B**

In December 2018, Losch sued Experian and Nationstar in federal district court for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Although Losch brought claims against both Experian and Nationstar, only his claims against Experian are relevant here.[2] In his second amended complaint, he alleged that Experian violated the FCRA by failing (1) to establish and/or follow reasonable procedures in preparing his credit report, 15 U.S.C. § 1681e(b); (2) to

---

[1] A comment on FCRA lingo: Losch is a "consumer." 15 U.S.C. § 1681a(c). Equifax is a "consumer reporting agency" that creates "consumer reports" (also called "credit reports"). *Id.* § 1681a(d), (f). A credit report compiles information provided by "furnishers," 12 C.F.R. § 1022.41(c)—usually, the consumer's creditors, like Nationstar here, before Losch discharged the mortgage.

[2] Losch settled with Nationstar before summary judgment, but his suit against Experian proceeded.

4

conduct a reasonable reinvestigation after receiving Losch's dispute letter, *id.* § 1681i(a)(1); (3) to provide Nationstar with all relevant information regarding the dispute, *id.* § 1681i(a)(2)(A); and (4) to correct or delete the disputed information from Losch's credit file, *id.* § 1681i(a)(5)(A). Losch contended that the violations were willful and that he was entitled to punitive damages, statutory damages, and attorney's fees. *Id.* § 1681n. In the alternative, he alleged that he was entitled to damages for Experian's negligent noncompliance with the Act, *id.* § 1681*o*.

The district court granted Experian summary judgment, concluding that under both § 1681e and § 1681i, its actions were reasonable as a matter of law. The court held that "[c]ontrary to Losch's argument, the statute does not impose any duties on the credit-reporting agency other than notifying the furnisher of the dispute and examining any information the consumer submits." In its view, Losch should have provided Experian with "specific information from which it could have discovered that he no longer owed money on the Nationstar mortgage," and his failure to do so was "dispositive." Finally, the court explained, Losch's theory of liability was a "bridge too far" because it would require credit-reporting agencies to examine court orders and other documents to determine their legal effect.

Losch timely appealed.[3]

---

[3] We review the district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in the light most favorable to the nonmoving party. *Hinkle v. Midland*

5

## II

Before reaching the merits, a threshold question: Does Losch have Article III standing? Neither party raised the standing issue, either before the district court or on appeal. But they vigorously contested whether Losch had shown any damages sufficient to survive summary judgment[4]—which, given Article III's "injury in fact" requirement, prompted us to ask for supplemental briefing about standing. After careful consideration, we conclude that Losch has standing to pursue his claims under § 1681e(b) and § 1681i.

To have Article III standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). This case primarily involves the injury-in-fact requirement—and in particular, the sub-requirement of "concrete[ness]." *See id.* at 1548 ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and

---

*Credit Mgmt., Inc.*, 827 F.3d 1295, 1300 (11th Cir. 2016). Summary judgment is appropriate where there is no genuine issue of material fact. *Id.* A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We may affirm "if there exists any adequate grounds for doing so, regardless of whether it is the one on which the district court relied." *Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008).

[4] *See Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) ("[F]ailure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.").

particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

An "intangible injury," such as the alleged violations of the FCRA here, may nonetheless constitute a concrete injury. *See id*. at 1549. In deciding whether an intangible harm is concrete, we consider "both history and the judgment of Congress." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc) (quoting *Spokeo*, 136 S. Ct. at 1549). Although that test can often be difficult to apply, its application to the FCRA provisions at issue here is made considerably easier by our decision in *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017).

As in this case, the plaintiff in *Pedro* asserted that a credit-reporting agency had violated § 1681e(b)'s requirement to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." We explained that "the harm caused by the alleged violation of the Act—the reporting of inaccurate information about [the plaintiff's] credit to a credit monitoring service"—bore a close relationship to the common-law tort of defamation, which was traditionally actionable *per se*. *Pedro*, 868 F.3d at 1279–80. Losch alleges the same harms here: Experian, he claims, repeatedly reported a non-existent delinquent mortgage debt on his credit report to third parties. Under *Pedro*'s reasoning, Losch needn't show that the false reporting

7

caused his credit score to plummet; the false reporting itself was the injury. *See id.*; *see also* Restatement (First) of Torts § 558 (Am. L. Inst. 1938); Restatement (Second) of Torts § 558 (Am. L. Inst. 1965). For the same reason, Losch needn't show that Experian's false reporting of the mortgage would be worse for his credit score than true reporting of a discharged-in-bankruptcy status; the injury isn't the one to his credit score, but rather, the false reporting about his debt.

In response, Experian says that Losch hasn't shown that it sent his credit report to third parties, as the defamation analogy would require. But as Losch points out, the reports themselves show otherwise. Losch's January 3, 2019 report, for instance, indicates that Experian supplied the report at least 26 times to six different entities. At oral argument, Experian sought to distinguish those communications by explaining that they were in response to "soft" inquiries, not "hard" inquiries—that is, inquiries not tied to a specific credit application, as opposed to those that are (and can thus affect a person's credit score). *See* Oral Arg. Tr. at 18:24–19:04; *see also Brown v. Vivint Solar, Inc.*, 2020 WL 1332010, at *1 n.2 (M.D. Fla. Mar. 23, 2020). For "soft" inquiries, Experian says, "most" merely involve "prescreen inquiries," where the creditor receives "only confirmation that a consumer meets a set of criteria selected by the creditor," as opposed to the consumer's complete report. Oral Arg. Tr. at 18:36–18:45; Doc. 85-1, at 5. But in saying "most," Experian implicitly acknowledges the possibility

8

that a creditor received Losch's full report, and it admits that it can't say for certain whether the Nationstar account was disclosed to third parties in connection with the prescreen inquiries. Drawing all factual inferences in Losch's favor at summary judgment, as we must, the evidence of inquiries on his credit report is sufficient to show that the report was sent to third parties.

Separately, Losch has shown a concrete injury in the form of the emotional distress and time he spent contesting the inaccurate information. In his deposition testimony and affidavit, he testified that he "suffered . . . from stress, anxiety, and lack of sleep" from the aftermath of his Chapter 7 bankruptcy discharge, and that he devoted nearly 400 hours to correcting the inaccurate information on his credit report. *See Pedro*, 868 F.3d at 1280 (explaining that Pedro also had standing because she had "lost time . . . attempting to resolve the credit inaccuracies"). Experian offers two responses, neither of which is availing. First, it says that even if those injuries are concrete, they aren't fairly traceable to it. But Experian's argument doesn't go far enough: It says only that *most* of Losch's emotional distress and the time he spent resolving his financial troubles resulted from the bankruptcy itself. *See* Appellee's Supplemental Brief at 10 ("[Losch] testified that he spent at most an hour dealing with his dispute to Experian . . . ."). Because there is no question that wasted time is a concrete harm, *see Salcedo v. Hanna*, 936 F.3d 1162, 1172–73 (11th Cir. 2019), Losch has standing to pursue his claims so

9

long as even a small part of the injury is attributable to Experian.  And construing the facts in the light most favorable to Losch, we can't say that Experian caused *none* of Losch's damage.

Second, Experian challenges the sufficiency of Losch's evidence showing emotional damages at all—an argument that also runs to the merits.  According to Experian, a plaintiff's "self-serving affidavit," standing alone, can't prove emotional damages sufficiently to survive summary judgment.  But that argument runs headlong into our en banc decision in *United States v. Stein*, in which we held that "[a] non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated."  881 F.3d 853, 858–59 (11th Cir. 2018) (en banc).  Losch's statements regarding "stress, anxiety, and lack of sleep" are not mere conclusory recitations of a damages element, and at summary judgment we must take the non-movant's facts—Losch's—as true.  Accordingly, Losch's affidavit is sufficient evidence both to establish injury for Article III standing purposes, and to raise a jury question about damages on the merits.

### III

On, then, to the merits.  Section 1681e provides that in preparing a consumer report, a consumer reporting agency "shall follow *reasonable procedures* to assure maximum possible accuracy" about an individual.  15 U.S.C. § 1681e(b) (emphasis

added). Section 1681i states that "if the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer . . . , the agency shall . . . conduct a *reasonable reinvestigation* to determine whether the disputed information is accurate." *Id.* § 1681i(a)(1)(A) (emphasis added). To state a claim under § 1681e, the plaintiff must show that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't "reasonable," and that damages followed as a result. *See Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991); *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002). The elements of a claim under § 1681i—which focuses on the consumer's credit "file" rather than his credit "report"—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report. *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015) ("A 'consumer report' requires communication to a third party, while a 'file' does not."). Because here, Losch challenges Experian's reinvestigation of an inaccuracy in his *report*, the report-file distinction is immaterial.[5] Accordingly, we will address together the reasonableness of Experian's report-preparation "procedures," § 1681e(b), and its "reinvestigation," § 1681i(a). Whether a credit-reporting agency acted reasonably

---

[5] As already explained, the evidence from Losch's credit report shows, for our purposes, that his report was distributed to third parties. *See supra* at 8–9.

11

under the FCRA "will be a jury question in the overwhelming majority of cases." *Cahlin*, 936 F.2d at 1156.

A plaintiff may recover damages for both negligent and willful violations of § 1681e and § 1681i.  *See* 15 U.S.C. § 1681*o* (negligent violations); *id.* § 1681n (willful violations).  Although Losch insists that all of Experian's violations were willful, we'll begin with his claims for negligence.

### A

#### 1

Before addressing whether Experian's report-preparation procedures and reinvestigation were reasonable, a prefatory matter:  Has Losch shown that his file contained, or that Experian reported, factually inaccurate information?  Experian says no.  Experian agrees that the bankruptcy court discharged Losch's mortgage and that, thereafter, he was no longer personally obligated to pay outstanding debts on it.  But, Experian says, a bankruptcy discharge is merely an injunction against certain means of enforcing a debt, not an expungement of a debt from one's record.  Thus, Experian contends, it did nothing wrong by reporting a debt that still existed.

Experian's premise is right, but its conclusion doesn't follow.  Although a bankruptcy discharge doesn't "expunge" a debt, Experian's report was still factually inaccurate.  Experian didn't just report the existence of a debt but also the balance that Losch owed, the amount that Losch was past due, and how long Losch

12

was past due. For instance, Losch's May 2018 report stated that as of March 2018, he (1) had a balance of $139,853, (2) had a past due amount totaling $10,006, and (3) was more than 180 days late. None of that was true following the bankruptcy-debt discharge—Losch was no longer liable for the balance nor was he "past due" on any amount for more than 180 days. *Cf. Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1414 (2017) (noting, as a general matter, that "discharge means that the debt (even if unenforceable) will not remain on a credit report").

**2**

Having concluded that Experian reported factually inaccurate information, we turn to the parties' primary dispute: whether Experian "reasonabl[y]" discharged its report-preparation and reinvestigation obligations by forwarding an ACDV form regarding the contested information to the data furnisher, Nationstar. Our circuit hasn't had much occasion to address the meaning of the term "reasonable" under either § 1681e or § 1681i, so we rely on other courts' guidance in resolving this issue.

Our sister circuits have laid out two corollary principles. First, a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004). Because "lenders report many millions of accounts to Experian daily," requiring it

13

to examine each report individually for errors would be unduly costly. *Id.* But on the flip side of the same coin, when a "credit reporting agency . . . has been notified of potentially inaccurate information in a consumer's credit report[,] [it] is in a very different position than one who has no such notice." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994). That's because "once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). We think those principles make good sense, and we now adopt them.

Applying them here, we can't say that Experian's procedures were reasonable as a matter of law. Once Losch informed Experian of a factual inaccuracy in his reports, Experian needed only to investigate that single, alleged error. Experian was thus in a "very different position" than before Losch contacted it. *Henson*, 29 F.3d at 286–87.[6]

Experian argues in response that this case is unique, given Losch's "confusing and unusual bankruptcy": Losch rescinded the reaffirmation agreement after the statutory deadline; nothing in the bankruptcy docket indicated that the debt was transferred from CitiMortgage to Nationstar; and the bankruptcy court's

---

[6] To the extent that any of Losch's claims under § 1681e alleges that Experian acted unreasonably in preparing any credit reports before he informed it of the relevant inaccuracy, the district court properly granted Experian summary judgment for that claim.

14

order discharging the Nationstar mortgage didn't expressly reference that mortgage. Determining the legal effects of a discharge order, Experian says, is precisely the kind of legal question that credit-reporting agencies are "neither qualified nor obligated to answer."

In our view, the unique facts of this case don't support granting Experian summary judgment but rather cut against it. To be sure, a "reasonable reinvestigation . . . does not require [credit-reporting agencies] to resolve legal disputes about the validity of the underlying debts they report." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). But Losch hasn't asked Experian to do that here. The bankruptcy court's discharge was unclear, but there is no doubt that Losch's mortgage was discharged. Thus, this case doesn't involve a legal dispute about the validity of the underlying debt.

This case is more analogous to *Collins v. Experian Information Solutions, Inc.*, 775 F.3d 1330 (11th Cir. 2015), and *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008). *Collins* involved facts materially indistinguishable from those here. In response to a consumer dispute, Experian forwarded an ACDV form to its data furnisher, but didn't conduct *any* independent investigation. *Collins*, 775 F.3d at 1331–33. When the furnisher inaccurately confirmed the information, the consumer sued. *Id.* We agreed with the district court that "an issue of material

15

fact remained as to whether Experian's investigation was reasonable when it disregarded the . . . information Collins provided and instead relied solely on [the data furnisher] to verify the debt." *Id.* at 1333.

*Dennis* is similar. There, Experian reported on the consumer's credit report that a "Civil Claim judgment" had been entered against him when, in fact, the case had been dismissed. *Dennis*, 520 F.3d at 1068–69. Rather than conducting its own investigation of the disputed information, Experian commissioned a third-party public-records vendor to verify the dispute. *Id.* at 1069. That vendor didn't correct the information, but rather confirmed it. *Id.* The Ninth Circuit held that the reasonableness of Experian's procedures was a jury question, where "Experian could have caught [the vendor's] error if it had consulted the Civil Register in Dennis's case." *Id.* at 1070. It's true that the error in *Dennis* was clearer than the one here. The "Civil Register" there "clearly indicate[d] that the case against Dennis was dismissed," while there is no similarly clear indication here. *Id.* But the result in hindsight—we know that had Experian looked in *Dennis*, it would have found, but not necessarily so here—can't dictate the reasonableness of Experian's procedures *ex ante*. Experian couldn't have known whether it would have found any information unless it had done even a minimal investigation—for instance, by reviewing the bankruptcy docket. It did nothing, although it easily could have done *something* with the information that Losch provided—an account

16

number, a discharge in bankruptcy, and an explanation of his recission of the reaffirmation. On those facts—where Experian didn't even check the bankruptcy docket—a jury could find that it was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information.

To be clear, our holding is a narrow one. Just as we cannot hold that Experian's procedures were *per se reasonable*, we do not hold that they were *per se unreasonable*. Nor do we hold that in every circumstance where a plaintiff informs a credit-reporting agency of an inaccuracy, the agency *must* examine court records to independently discern the status of a debt. Even when a consumer has informed the agency about inaccurate information, there may be circumstances—say, when the consumer supplies insufficient detail—in which there is no jury question about the reasonableness of the agency's investigation or reinvestigation. Or the facts may show that the agency took alternative steps to verify information, such as contacting the consumer. Again, on the facts of this case—where (1) Losch provided a sufficiently detailed notice to Experian for it to investigate the inaccuracy and (2) Experian did nothing other than forward the letter to its data furnisher—we cannot say that Experian's procedures were reasonable as a matter of law, such that it was entitled to summary judgment.

**B**

Although Losch's negligence claims may proceed, the same cannot be said for his claims that Experian's violations were willful.  To establish a willful violation, Losch must show that Experian "either knowingly or recklessly violated" the FCRA.  *Pedro*, 868 F.3d at 1280.  A credit-reporting agency recklessly violates the Act if it takes an action that "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).  A violation isn't willful where a defendant "followed an interpretation that could reasonably have found support in the courts . . . ."  *Id.* at 70 n.20.

Here, Experian's interpretation could "reasonably have found support in the courts."  As other circuits have noted, the reporting agency's "'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009).  And in *Collins*, we rejected a willfulness challenge on facts nearly identical to those here:  "Taking no steps other than contacting only [the data furnisher] with an ACDV form regarding the disputed entry might have been negligent, but

18

willfulness or recklessness is a higher standard that has not been met in this case." *Collins*, 775 F.3d at 1336.[7]

## IV

In sum, we conclude that Losch's claims that Experian negligently violated § 1681e and § 1681i by failing to undertake reasonable procedures to ensure maximal accuracy in its credit reports, and to conduct a reasonable reinvestigation of disputed information, survive summary judgment. Thus, we **VACATE IN PART**, **AFFIRM IN PART**, and **REMAND** for further proceedings consistent with this opinion.

---

[7] Before us, Losch has focused on his argument that Experian willfully violated the Act. Experian thus contends that we should grant it summary judgment once we conclude that Losch's claims for willfulness are deficient. But Losch has consistently requested relief for Experian's negligent violations under § 1681*o* too. And Experian acknowledges that "[t]he District Court did not reach the distinction between a negligent violation of the FCRA under § 1681*o* and a willful violation under § 1681n." Thus, Losch's failure to show willfulness does not defeat his suit altogether.

19

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 28, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-10695-BB
Case Style: Henry Losch v. Experian Information Solutions
District Court Docket No: 2:18-cv-00809-PAM-MRM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Richardson, BB at (404) 335-6174.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion